Good morning. I'm John McNichols. I'm here with Chris Hart, and together we represent Eric Blattman, who's the appellant here. I'd like to reserve two minutes for the court's indulgence. Yes. Thanks. The question that's before the court on this appeal is whether a person who is not a party to litigation, but who prepares materials to help a party in litigation, can claim work product and thereby prevent the party for whom they were prepared from disclosing them in litigation. And the answer to that question is no, and that should be dispositive of the outcome here. The materials that my client is attempting to use are documents that were prepared by Thomas Scaramellino, who's the appellee, and in them he provides factual accounts of the critical events in the lawsuit that my client has filed against Thomas Siebel, now pending in the District Court of Delaware. Among other things, Mr. Scaramellino describes the merger negotiations of his company and Mr. Siebel's company, which negotiations my client has alleged in his case amounted to fraudulent inducement. Some months after Mr. Scaramellino prepared those factual accounts, he gave a sworn declaration to Mr. Siebel, in which he gives a very different account of those same events, and at the time he gave that declaration, he was paid a very handsome six-figure sum as part of a larger transaction, whereby Mr. Siebel bought back Mr. Scaramellino's shares of stock in Mr. Siebel's company. At Mr. Scaramellino's deposition, I sought to examine him about the earlier accounts that he gave before he was paid this very large sum, but he refused to answer on grounds of privilege and work product. There are four documents at issue, the first three of which we call the merger summaries. They are not communications to counsel at all. They are simply descriptions of the underlying events that Mr. Scaramellino wrote up and then sent to my client, Mr. Blattman. The fourth one, which we call the July 2013 email, was also sent to Mr. Blattman, but on that email Mr. Scaramellino copied his own counsel, Mr. Godkin, who did not represent Mr. Blattman. None of the four documents, therefore, is a communication to counsel in confidence as the law requires for the application of the privilege. And, at least with respect to the merger summaries, it should be noted that Mr. Scaramellino had never even met or spoken with the lawyers from the Tibbetts, King and Butler firm with whom he claims later to have had an attorney-client relationship. For these reasons, the district court below found that the documents at issue were not covered by the attorney-client privilege, but it did hold, however, that they were work product. And, on that point, the court noted that the documents were, and I'm quoting here, created, at least initially, with the motive of assisting anticipated litigation to be undertaken by Mr. Blattman. That finding was fully consistent with the record, as Mr. Scaramellino testified, that he had released his claims against the defendants in the underlying case and that his principle in overriding concerns That finding that you quote, that's in the part of the district court's decision where he's talking about the attorney-client privilege. Then, when he gets to the work product, perhaps somewhat inconsistently, the premise of that analysis seems to be that Mr. Scaramellino had his own reasons for preparing these documents because he was, again, there's no explicit finding, but I gather the premise of giving Mr. Scaramellino the benefit of the work product is that, again, he, in fact, a dual purpose. Yes, he was preparing for Mr. Blattman, but he also was considering litigation himself. And, hence, he has the benefit of the work product doctrine. I don't know how else to read the district court's analysis there unless he made such a finding. Clearly, that's the appellee's argument, Your Honor, that there were implicit findings about Mr. Scaramellino's dual purpose. Well, how else could you explain his giving Mr. Scaramellino the benefit of that doctrine unless he had his own reasons to be preparing the documents? We took the district court at face value that the only motive ascribed to Mr. Scaramellino in the district court's decision was the motive of helping Mr. Blattman. That appeared, from the decision itself, to be the only premise, factual premise, that is, for the application of work product. And, on that point, I would note that Mr. Scaramellino bore the burden of proof to bear out the elements either to establish privilege or work product unless the absence of an express finding that he had a separate individual motive for creating the documents operates against him. Certainly, Mr. Scaramellino had the option to seek further and more detailed factual findings from the district court that would support the holding or to seek remand here for the entry of those additional findings, but he hadn't done that. And, therefore, the fact that the district court declined to find or declined to acknowledge any motive or self-serving motive by Mr. Scaramellino is not something that this court should read into that opinion and it's not something that Mr. Scaramellino should be able to invite this court to infer from that opinion. You're not arguing that the record precludes a finding of that sort, are you? Yes. Our reading of that is that the district court made a conscious decision not to find that Mr. Scaramellino was pursuing his own interests. That's a slightly different answer to the... Right, but... It's a different question. Just on the point of... I understand there's a question of how to read what the district court did. Insofar as one reads the district court as making an implicit finding of the sort that Scaramellino was operating on his own, do you argue to us that the record does not support such a finding? Yes, we would on the basis that Mr. Scaramellino... Have you? Yes, we have argued that. That, in fact, because Mr. Scaramellino had released his claims against the defendants and repeatedly testified in deposition that he wanted nothing more than simply not to be involved, that the conclusion that Mr. Scaramellino was, in fact, pursuing his own interests in preparing the documents is inconsistent with the record that the district court considered. On that point, I would note that Mr. Scaramellino does not really dispute that a non-party to litigation can claim more product, and as the court's questions have teased out, the crux of his argument... I'm just trying to... Yes. And so what do you want us to do in light of that point? Reverse. Yeah. Reverse. Reverse and enter an order that the motions compelled should be granted and that Mr. Scaramellino should be compelled to answer questions at his deposition about those documents. And that, just so I get the logic of that, on that view, since the only viable route in which we could affirm would be to find an implicit finding of the sort you just described, and since the record precludes such a finding, there's no point in trying to figure out exactly what the district court was doing. We just should reverse because there's no way on this record any other outcome is permissible. Is that the idea? That's correct, Your Honor. Unless there are further questions, my time has expired. Good morning, Your Honors. May it please the court. Adam Cashman on behalf of the respondent, Appleby, Mr. Scaramellino. Counsel spent a fair amount of time talking about what the record below suggested and what it would allow. And on this score, I think the court was asking some important questions here because below, Mr. Blattman argued that, in support of his motion to compel, that the record did not allow for any finding of attorney-client privilege or attorney work product. That is, he made strictly a factual argument. The argument that we just heard today and in the papers, and it really is crystallized for the first time in the reply brief, i.e., that as a matter of law, a non-party has no right or no ability to assert work product protection, that argument was never advanced below. Rather, the arguments that Mr. Blattman made to the district court were based strictly on what the factual record did and did not show. Counsel, let me ask you a question about that factual record because in reading the transcript of the deposition that we have in the record, it seems to me that Mr. Scaramellino takes considerable pains to make clear that he was preparing what we're calling the merger documents. He was preparing those for Mr. Blattman. At the time that he was preparing those documents, he had no personal interest in litigation. He viewed himself as Mr. Blattman's law clerk. I think he actually uses that language. And so, arguably, the record would compel the conclusion that Mr. Scaramellino did this at Mr. Blattman's behest. These are Mr. Blattman's documents, and to the extent that there's any work product doctrine involved at all here, Mr. Blattman, they're his documents. He can waive it, and he can say, you've got to answer these questions. So I find it hard to see on this record how there can be any argument that Mr. Scaramellino has any right to invoke work product. Well, respectfully, Your Honor, I disagree on a couple points on that. Obviously, the law clerk phrase is a phrase that is used throughout the briefing, but taken as a whole, that deposition that Mr. Scaramellino gave, and in addition some of the other documents that are in the record and that were presented to the district court, I think fairly reflect that he was not only seeking to provide the information to Mr. Blattman, but that he was doing it not only to help Mr. Blattman with the evaluation of his claims, but also so that Mr. Blattman and Mr. Scaramellino could give their joint counsel, which is referred to as the Tibbetts firm, the information that that firm needed to evaluate their claims. And on that score, there were some areas of overlapping interest, and what Mr. Scaramellino, I think, was referring to when he was saying that he did not want to be a part of other claims were certain fraud claims that Mr. Blattman... But counsel, doesn't the district court's finding on the attorney-client privilege sort of belie that argument? I mean, the district court doesn't really go into all the elements of the attorney-client privilege, but he says that Mr. Scaramellino, by sharing these documents with Mr. Blattman, has waived any attorney-client privilege, suggesting thereby that he rejected any notion that they had some common interest, that they were somehow both involved in an attorney-client relationship. So, again, it seems to me that that finding really undercuts the argument that you're trying to make. Well, I don't think so, Your Honor, and the reason is because I agree that the discussion, the district court's reference to erasing any plausible claim of attorney-client privilege is itself a discussion of waiver. There's no other plausible way to understand that reference in the district court's opinion. But the court also referred to a non-attorney third party, which to me suggests that the court was thinking that Mr. Blattman was somehow outside of the scope of the privilege and was not considering whether they, in fact, had a common interest. And just to come back to Your Honor's question from a moment ago, because I think it's an important point, there's a document in the record, and it's at 231 of the appendix, and it is an email from Mr. Speramolino to Mr. Blattman transmitting one of the three merger summaries, and it's, in fact, the one that Mr. Blattman seems most concerned with, the so-called Project Elephant Memorandum. And there he says a number of things, but the key phrase is, there should be enough in here for the lawyers to evaluate our claims. There are other documents in the record that we have pointed to. For instance, the drafts complaint that had Mr. Speramolino's name on it and was sent to him by the Tibbetts firm for his review and comment. They were clearly acting as his lawyers. Mr. Speramolino clearly believed that they were his lawyers, and he was providing this information for them. But at worst, in the light viewed least favorably to Mr. Speramolino's position, all of these are factual determinations, and all of them were presented to the district court, and the district court came out the way it did. So those are reviewed. All of this is reviewed under a deferential abuse of discretion standard, and that's clear from the Cusimano case that Mr. Blattman has cited, and it's clear from the other cases. So there is simply nothing that Mr. Blattman can point to, no clear error of fact that is laid out in the record before this court that would compel a reversal on a factual basis. Now, for the first time, he is saying, well, non-parties have no legal standing, no legal right to assert the work product protection. But there's no case, at least not in this circuit, that so holds. And there are other, among the cases that Mr. Blattman has cited, and they all seem to have the same name in grand jury subpoena, but the new parent case and the case coming out of the Eighth Circuit that had to do with the Office of Special Counsel's investigation into the Clinton White House both suggest that joint holders of a work product protection do have a right to object and not to waive a privilege, even if the other party to the joint interest desires to waive it. But you're saying this non-party argument was never raised below? Correct. Mr. Blattman argued this motion to compel below strictly as a factual matter, arguing that the record did not support any assertion of privilege or work product protection, period. The argument was never raised below. So we're seeing it here for the first time. The other argument that Mr. Blattman has raised here is that the joint holder of a privilege has the right to waive it. And again, I think that if you look carefully at the new parent case, which this Court decided in 2001, or if you look at the Eighth Circuit case, also entitled In Re Grand Jury Subpoena. Could you just go back one step, though? So if all that was argued below was this factual point, that the record compelled the conclusion he was doing it for himself, then why wouldn't it make sense to just read the district court as with respect to the work product? Oh, I see what you're saying. I got it. So if you look at the cases that Mr. Blattman is chiefly relying on, they do suggest, and in fact they state, that in the situation of a joint privilege, of a common privilege, where you have either a common interest agreement, or as in this case, you have two clients of one law firm, that one holder of the privilege, the person that actually makes the communication, does have a right to preclude disclosure by the other person. Now, even if that principle were to be rejected, and the court were to say, well, either holder of the privilege may waive it, all of those cases deal with disclosure of materials that were prepared in the context of a joint common interest or of a joint privilege. None of those cases deal with the entirely different situation that's presented here, where one party to the attorney-client relationship desires to use the materials for cross-examination and specifically for impeachment of the other party to the joint privilege. And that is just an entirely different scenario that is nowhere reflected in any of the case law that has been cited. So, on that point, your honors, I think that there has been no basis that has been suggested that the district court somehow committed some abuse of discretion in finding that the work product protection applied in this joint client scenario, and certainly Mr. Blattman has suggested none today. So, finally, with respect to the attorney-client privilege, I addressed it earlier, and I believe, Judge Lopez, that the district court simply erred in holding that there was a waiver of the privilege by disclosure to a non-attorney third party. Thank you very much. Thank you. Just to address the point about the standard of review, we agree that there was no abuse of discretion here, and we're not suggesting that that's the applicable standard. The standard is de novo review for questions of law, and the question of what it means that Mr. Scarmolino was preparing documents for Mr. Blattman and the legal effect of that is a legal determination that this court may review de novo. As to counsel's point that there are apparently no cases on his... Before you get to that point... Yes. With respect to the question of whether he was doing it solely for himself or not, is that a factual question that would be reviewed for clear error? Yes, the question of Mr. Scarmolino's intent, I think, is a factual question he would review for clear error. That's right. And the legal effect of that, of course, is a legal question, subject to de novo review. On the point, though, that there are no cases or an absence of authority holding that someone other than the party for whom documents were prepared can claim more product over those documents, I think that's completely inconsistent with the cases that counsel has cited, the new parent case and then the earlier grand jury case from the Eighth Circuit, both of which declined to find work product, or I should say reversed holdings that work product existed in cases where one party to a relationship was attempting to prevent the other party from disclosing work product. And in the second case, the one out of the Eighth Circuit, the court held that the White House could not claim work product over materials that were prepared for the benefit of First Lady Hillary Rodham Clinton, which is analogous to this situation, in that Mr. Scarmolino is trying to claim work product over materials that were prepared for Mr. Blackman by his own testimony. Did you make this argument below? Yes, Your Honor. Below, clearly we did not have Judge Stern's factual findings before us, but we made the argument that Mr. Scarmolino cannot plausibly allege work product when he repeatedly stated in his deposition that, as Judge Leith has noted, I was merely a law clerk. And when he's disclaiming any interest in the litigation, he can't plausibly claim that the work product accrues to his benefit. If there are no further questions. Thank you both. Thank you.